IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO.  1:24 CR 00274 |
| Plaintiff | : | JUDGE DONALD C. NUGENT |
| vs. | : | |
| TERRANCE D.N. MCCORMICK, | : | TERRANCE D.N. MCCORMICK'S SENTENCING MEMORANDUM |
| Defendant | : | |

0O0

Now comes Defendant, through his attorney, Attorney, John P. Luskin, and respectfully submits for the Court's consideration factors relevant to the sentence to be imposed upon a defendant pursuant to 18 U.S.C., § 3553(a), 18 U.S.C. §3582 (a), 18 U.S.C. §3661 and additional facts relevant to the instant case and the defendant's history.

## I. LAW

After the Federal Sentencing Guidelines were made advisory by the United States Supreme Court, as it relates to the sentencing of the defendant, it is respectfully submitted that in United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held those sentencing guidelines are advisory, not mandatory, and that other factors set forth in 3553(a) must be considered in fashioning the appropriate sentence. See Booker at 790 (sentencing guidelines are but one of many statutory concerns that federal courts must take into account during sentencing determination).

In United States v. Ranum, 353 F. Supp.2d 984 (E.D. Wis. 2005) the court imposed a sentence *lower* than that recommended by Guidelines, stating that, while the court agreed that it must seriously consider Guidelines, ***"Booker is not an invitation to do business as usual."*** (Emphasis added).

In <u>United States v. Myers</u>, 353 F. Supp.2d 1026 (S.D. Iowa, 2005) the Court logically stated *"[t]o treat the Guidelines as presumptive is to concede the converse, i.e., that any sentence imposed outside the guideline range would be presumptively unreasonable in absence of clearly identified factors . . . making the Guidelines, in effect, still mandatory."*

The Booker decision essentially establishes that the guidelines should merely be treated as one of the factors to be considered. See <u>U.S. v. Booker</u>, at 790. These factors include:

> 1. The nature and circumstances of the offense and the history and characteristics of the Defendant.
> 2. The need for the sentence imposed - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; C) to protect the public from further crimes of the Defendant; and (D) to provide the Defendant with needed education or vocational training, medical care or other correctional treatment in the most effective manner.
> 3. The kinds of sentences available.
> 4. The advisory guideline range.
> 5. Any pertinent policy statements issued by the Sentencing Commission.
> 6. The need to avoid unwarranted sentence disparities.
> 7. The need to provide restitution to any victims of the offense.[1]

**B. 18 U.S.C. Section 3553(a)**

Section 3553(a) states that the nature and circumstances of the offense and the history and characteristics of the defendant are to be considered in determining a sentence. Further, "the court shall impose a sentence ***sufficient, but not greater than necessary***, to comply with the purposes [of sentencing]." 18 U.S.C. Section 3553(a)(emphasis added).

In determining the particular sentence, courts must consider all the factors set forth in:

> 18 U.S.C. 3553 states in part:
> **(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of

---

[1] See: Note, Booker and Our Brave New World: *The Tension Among the Federal Sentencing Guidelines, Judicial Discretion, and a Defendant's Constitutional Right to Trial by Jury*, 53 Cleve. St. L. Rev. 657 (2005-06).

this subsection. The court, in determining the particular sentence to be imposed, shall consider--

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

**(2)** the need for the sentence imposed--

**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

**(B)** to afford adequate deterrence to criminal conduct;

**(C)** to protect the public from further crimes of the defendant; and

**(D)** to provide the defendant with needed educational or vocational training, medical care, or other Correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

**(4)** the kinds of sentence and the sentencing range established for--

**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

**(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and are in effect on the date the defendant is sentenced; or

**(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

**(5)** any pertinent policy statement--

**(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced. [FN1]

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

Thus, Section 3553 (a) places the guidelines on equal footing with the other factors and the overriding principle and basic mandates of 3553(a) require district courts to impose a sentence "sufficient, but not greater than necessary, . . . " while giving consideration to "the nature and circumstances of the offense and the history and characteristics of the defendant," i.e., retribution, deference, incapacitation, and rehabilitation, the defendant, Troy Pinnock, hereby presents the following for the Court's consideration in determining the appropriate sentence to comply with the goals, particularly with respect to the defendant's limited role in the drug conspiracy in this case.

## II. INTRODUCTION

### A. PROCEDURAL HISTORY:

On June 12, 2024, the government filed a 13-count Indictment in the United States District Court for the Northern District of Ohio charging Terrance McCormick, Jonez Ammons, Jonnell Ammons, Karim Davis, Tyler Sands, Ashley Steiner, and Jonte Averiett with drug and firearm violations. Terrance McCormick was charged in Counts 1 through 4 and counts 7 through 13. Count 1 charged that from May 2023 to January 2024, Terrance McCormick, Jonez Ammons, Jonnell Ammons, Karim Davis, Tyler Sands, Ashley Steiner, and Jonte Averiett committed Conspiracy to Distribute and to Possess with Intent to Distribute Methamphetamine and Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), (b)(1)(C), and 846. Count 2 charged that on September 14, 2023, Terrance McCormick and Jonte Averiett committed Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Count 3 charged that on September 14, 2023, **Terrance McCormick** committed Felon in Possession of Firearms and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Count 4 charged that on September 14, 2023, Terrance

McCormick committed Possession of Firearms in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Counts 7 through 13 charged that on various dates between May 7, 2023, and August 28, 2023, Terrance McCormick, Ashley Steiner, Jonez Ammons, Tyler Sands, Karim Davis, Jonnell Ammons, and Jonte Averiett committed Use of a Communication Facility to Facilitate a Felony Drug Offense, in violation of 21 U.S.C. §§ 843(b) and (d)(1). Terrance McCormick was named in Counts 7 through 13, respectively. On May 6, 2025, Terrance McCormick pled guilty Counts 1 through 4 of the Indictment.

Pursuant to a written Rule 11(c)(1)(A) and (B) plea agreement, the parties have no agreement about the sentencing range to be used or sentence to be imposed in this case, other than to stipulate to the computation of the advisory Sentencing Guidelines offense level. Each party is free to recommend whatever sentence it believes to be appropriate. The sentences for Counts 1 and 4 must include a term of imprisonment, and the charges against the defendant in Counts 7 through 13 will be dismissed at sentencing. The defendant agreed to forfeit firearms, ammunition, and a Rolex watch. An orange 2022 Chevrolet Corvette and $8,560 has already been forfeited through the Drug Enforcement Administration. The parties agree that the following calculation, using the current advisory Sentencing Guidelines Manual, represents the correct computation of the applicable offense level.

The defendant has been held in federal custody since June 25, 2024.

**B. SOCIAL HISTORY**:

The defendant was born on March 8, 1984, in Akron, Ohio, to Tracey McCormick and Gary Franklin. The defendant also reported having approximately 10 to 15 paternal siblings, and he indicated that he has cordial relationships with them. The defendant maintains positive relationships with his mother and many of his siblings. He described that his mother has always been significantly involved in his life. The defendant and his mother saw each other daily prior to the defendant's arrest in this case, and they speak on the phone a few times per week while the defendant has been in custody for this case. The defendant's father passed away when the defendant was about 16 years old. The defendant shared that he was close with his father, and he indicated that he took his father's death hard He mentioned that his older brothers were on bond and "fighting" a criminal case. According to online records for the Summit County Common Pleas Court, Tracy McCormick has a pending case for Aggravated Possession of Drugs and Tampering with Evidence. These charges appear to be related to the search at 1056 Vernon Odom Boulevard in Akron, Ohio, in the instant federal case. According to online records for the Summit County Common Pleas Court, Thomas McCormick has a pending case for Aggravated Possession of Drugs, Tampering with Evidence, and Aggravated Trafficking in Drugs. Tyler McCormick is a codefendant in Thomas McCormick's case. According to supervision records, Tyrell McCormick, was on supervised release for a 2019 Felon in Possession of a Firearm case with this Court. His supervision was revoked in 2024, and he was released from BOP custody in February 2025.

The defendant highest level of education was the 11th grade at Buchtel High School. The defendant is interested in obtaining a GED.

From sometime in 2023 to June 2024, the defendant was employed as a full-time warehouse worker and delivery driver for Adbark in Akron, Ohio, earning $21 per hour in cash. The probation officer was not able to find this company utilizing online sources. From 2022 to 2023, the defendant was unemployed. He supported himself through the money he saved up from his car wash business. From 2018 to 2022, the defendant co-owned a car wash in Akron, Ohio, with Kirk Thorten, and the defendant reported earning $5,000 per month. The defendant indicated that he, Kirk Thorten, and three other employees worked at the car wash. The business failed during the COVID-19 Pandemic; therefore, they stopped renting the space and shut down the business. The defendant did "side jobs" and renovated houses for people he knew. Carnae Oden confirmed McCormick was last employed prior to the COVID-19 pandemic in which he worked for a car wash. Oden also noted that Mc Cormick volunteered for a non-profit called Forever R. Children, which is based out of Akron, Ohio.

### C. SUMMARY:

Counsel is of the humble opinion that if done in this fashion this Honorable Court's sentence will achieve the goals of sentencing under section 3553(a).

The defendant has accepted responsibility for his actions and shows extreme remorse. In addition to accepting responsibility for his conduct, the defendant regrets the choices he has made and is also extremely remorseful for his part in this action. As a matter of fact, he has shown extreme remorse throughout this case. McCormick understands the implication of his

unlawful actions and its effect in his life and his family.

In looking at the nature and circumstances of the present offense and the history of the defendant, the Court should evaluate the following factors:

1.) Terrance McCormick has accepted responsibility for his actions and in an expeditious fashion. He understands the seriousness of the crime he has committed and expressed his sincere remorse and apology.

2.) He has cooperated with the authorities by providing complete and truthful information of his involvement to the best of his knowledge.

3.) The defendant has a known criminal history category IV. The defendant is 41 years of age. Terrance McCormick is an extremely likeable individual. Although, he does not wish to demean the seriousness of this action.

Terrance McCormick requests this Court to consider his remorse, the characteristic pitfalls and familial life during his youth and formative years. We beg this Honorable Court to take all these unique factors into account when considering the appropriate sentence.

### D. THE RISK OF RECIDIVISM OF THE DEFENDANT

The second factor to be evaluated by the Court is to assess the need for the sentence imposed and the risk of re-offending of the defendant.

The empirical evidence is unanimous that there is no relationship between sentence length and general or specific deterrence, regardless of the type of crime. See Andrew von Hirsch et al., Criminal Deterrence and Sentence Severity: An Analysis of Recent Research (1999) (concluding that "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring

-8-

that increasing the severity of sentences generally is capable of enhancing deterrent effects"), Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006) ("[I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects.. . . . . . . . . . . . . . . . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence.") ; David Weisburd et al., *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes*, 33 Criminology 587 (1995) (finding no difference in deterrence for white collar offenders between probation and imprisonment); Donald P. Green & Daniel Winik, *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders,* 48 Criminology 357 (2010) (study of over a thousand offenders whose sentences varied substantially in prison time and probation found that such variations "have no detectable effect on rates of re-arrest," and that "[t]hose assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year time frame."). The Sentencing Commission has found that "[t]here is no correlation between recidivism and guidelines' offense level. . . . . . . . While surprising at first glance, this finding should be expected. The guidelines' offense level is not intended or designed to predict recidivism." *U.S. Sent'g Comm'n, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 15 (2004) ["U.S. Sent'g Comm'n, Measuring Recidivism"], See also Part IV.A.3. The best available evidence is that prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen et al., *Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*, 91 Prison J. 48S, 50S-51S (2011).

Terrance McCormick does not believe he is a risk to re-offend. This statement may sound hollow to the court based on his past. His time behind bars has made him reliaze at age 41 this type of behaviour is unquestionably not the way to live.

### III. SENTENCING

Although the defendant is not minimizing the seriousness of the offense, it should also be stressed, and can be easily ascertained, that defendant has not had any contact with law enforcement.

Terrance McCormick provided a compelling statement to the US probation department that expresses his remorse and acceptance of responsibility. Consequently, Defendant requests the court grant the three (3) level reduction for acceptance of responsibility.

McCormick requests that the Court look to the kinds of sentences available. As noted above, the defendant requests this Court to consider a sentence that is sufficient, but not greater than necessary to fulfill the requirements of 18 U.S.C., section 3553(a). While looking to the nature and circumstances of the offense, this Court can conclude that;

1)    he has timely accepted responsibility for his actions and
2)    he is 41 years of age.

In reviewing the history and characteristic of the defendant, this Court can resolve itself of the fact that McCormick,

1)    is remorseful,
2)    is resilient in his desire to better himself.

In determining the kinds of sentences available, this Court is not limited in what factors it may consider. Terrance McCormick can and has been rehabilitated and he is not

beyond saving. This request in no way means to downplay the seriousness of the offense, but the crime involved would not be diminished and the sentence imposed by the Court would still fit the crime.

### IV. CONCLUSION

For the above stated reasons, it is respectfully requested that this Court impose a fair and just sentence, a sentence that would not demean the seriousness of the offense, yet one that is wise and just for the betterment of Terrance McCormick. McCormick adheres to a saying: "I will walk by faith even when I cannot see." In many respects it is his faith in God and in this Honorable Court which will allow him to survive

Respectfully submitted,

/s/ John P. Luskin
―――――――――――――――――――

JOHN P. LUSKIN
Attorney for Defendant
5252 Meadow Wood Blvd.
Suite 121
Cleveland, Ohio 44124
(216) 513-6099

Supreme Court No. 0040158

### SERVICE

A copy of the foregoing Sentencing Memorandum was provided to David Toepher,

United State Attorney for the Northern District of Ohio and Assistant United States Attorney Peter E. Daly, Esq. and Jason M. Katz, Esq., was forwarded via the Court's Electronic Filing System this 21st day of August 2025.

/s/ John P. Luskin

_____

JOHN P. LUSKIN
Attorney for Defendant